# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
# BROOKLYN DIVISION

―――――――――――――――――――――― x

:                    Case No. _____

NADIA RAMNATH and MICHAEL                    :
GUZMAN on behalf of themselves and          :
all others similarly situated,               :

     *Plaintiffs*,                               :                    CLASS ACTION COMPLAINT

                                               :                    <u>DEMAND FOR JURY TRIAL</u>

v.                                           :

SAMSUNG ELECTRONICS                          :
AMERICA, INC.; SAMSUNG                       :
SEMICONDUCTOR, INC.; and DOES               :
1-10,                                        :

     *Defendants.*                             :

―――――――――――――――――――――― x

Plaintiffs NADIA RAMNATH and MICHAEL GUZMAN ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung Electronics") and SAMSUNG SEMICONDUCTOR, INC. ("Samsung Semiconductor" collectively with Samsung Electronics, "Samsung") and DOE DEFENDANTS 1-10 (together, with Samsung, the "Defendants") seeking damages (including actual, consequential, and statutory damages), restitution injunctive relief, a declaratory judgment, reasonable attorneys' fees and costs, as well as pre- and post-judgment interest. Plaintiffs allege the following based upon information and belief, the investigation of their counsel, and their personal knowledge as to the allegations pertaining to themselves, as follows:

## NATURE OF THE CASE

1.      Samsung, the largest Android smartphone producer globally as well as in the United States, manufactures and sells the Galaxy S22, S22+, and S22 Ultra mobile phone ("Galaxy Devices" or "Product") which are three of its best-selling smartphone devices. Samsung pushes out updates to its smartphones through pop-up notifications that continue to pop-up on the screen until the consumer clicks on the "update now" image. Unfortunately for Samsung's large customer base, in or around October 2024, Samsung deployed the One UI 6.1.1 update ("6.1.1 Update") to all Galaxy Devices, including to Plaintiff's phone. The 6.1.1 Update had a

devastating impact on Plaintiff's and the putative Class Members' Galaxy Devices without warning: it rendered the phones inoperable by triggering an endless reboot loop, causing repeated crashing and data loss and ultimately failure (herein, the "Update Defect").

2.      Thousands of Galaxy Device users subjected to the 6.1.1 Update reported sudden device failure and boot looping immediately following the 6.1.1 Update, while seeking assistance and remediation through Samsung's support channels and online forums. Prior to selling consumers Galaxy Devices, Samsung was aware its Galaxy Devices were susceptible to critical and potentially fatal defects resulting from software updates, including catastrophic failures such as motherload damage and total device loss which updates such as the 6.1.1 Update can and have caused. Samsung was aware of the Update Defect prior to or shortly after initiating the 6.1.1 Update rollout. Yet, despite this knowledge prior to sale, Samsung failed to disclose to consumers that the Galaxy Devices were susceptible to critical and potentially fatal defects and failed to take appropriate steps to warn users or to halt the 6.1.1 Update in a timely manner and has refused to provide affected consumers with meaningful remedies, such as free repairs or data recovery support.

3.      As a result of Samsung's unfair and deceptive business acts and practices, owners of the Galaxy Devices, including Plaintiff, have suffered

ascertainable losses. Samsung's conduct was aggravated by its refusal to offer a recall, refund, or meaningful support, despite widespread and immediate user complaints.

4.    Had Plaintiffs and other Class Members known the Galaxy Devices were susceptible to critical and potentially fatal defects resulting from software updates, design, manufacturing, workmanship and/or materials defects prior to purchase, or about the Update Defect at the time of purchase or prior to installing the update, they would not have purchased the Galaxy Devices or would have paid significantly less for them.

5.    As a result of Defendants' misrepresentation and omissions regarding the nature of the Galaxy Devices and the Update Defect, and the monetary and data-related costs associated with attempting to remedy the damage, Plaintiffs and the Class Members suffered an injury in fact, incurred damages, and otherwise have been harmed by Samsung's conduct.

6.    Defendant Samsung — a dominant force in the global smartphone industry — continues to profit in the billions from the sale of its Galaxy smartphones, including the Galaxy S22, S22+, and S22 Ultra models,[1] while concealing serious known defects from consumers. Through false advertising, misleading marketing

---

[1] https://news.samsung.com/global/samsung-electronics-announces-first-quarter-2025-results, (last accessed Jan. 3, 2025).

claims, and deceptive omissions, Samsung has misrepresented the functionality and reliability of its devices, despite knowing its Galaxy Devices are susceptible to critical and potentially fatal defects resulting from software updates, including without limitation that updates such as the 6.1.1 Update can and have caused catastrophic failures in affected devices, which has rendered many devices inoperable and worthless to the consumers such as Plaintiff who purchased them.

7.    Reliable software stability and system functionality are core and material features of smartphones. Given that Samsung markets its Galaxy S22, S22+, and S22 Ultra line of devices as high-performance, AI-enhanced tools for work, communication, and everyday life, a defect that causes any type of device failure, including repeated crashing, boot looping, or permanent bricking, renders the Product unable to perform its essential functions and therefore effectively worthless for its intended and advertised purpose.

8.    Reasonable consumers expect that flagship smartphones sold at a premium price will perform as advertised, particularly with respect to basic reliability. In an age where digital access, remote work, and mobile connectivity are indispensable, consumers' reliance on their smartphones is constant and critical. Devices marketed as intelligent, high-performance productivity tools are expected to deliver on that promise. Plaintiff and members of the Class would not have purchased the Galaxy S22, S22+, or S22 Ultra devices (or would have paid

significantly less) had they known that the Galaxy Devices are susceptible to critical and potentially fatal defects resulting from software updates, such as Samsung's 6.1.1 software update, which carried a substantial risk of disabling their devices altogether, without adequate warning, remedy, or recourse.

9.    Plaintiffs and class members suffered significant economic injury and lost time, as well as other resources, as a result of purchasing Samsung's defective Galaxy Devices.

## JURISDICTION AND VENUE

10.    *Subject Matter Jurisdiction.*  This Court has subject matter jurisdiction over this Action pursuant federal question jurisdiction, supplemental jurisdiction for state law claims, as well as to the Class Action Fairness Act of 2005 ("CAFA") because there are (a) more than 100 members of the proposed classes, (b) there is minimum diversity as members of the proposed classes have a different domicile or citizenship from the Defendants, and (c) the claims of the proposed class members exceed $5 million, exclusive of costs and fees.

11.    *Personal Jurisdiction.*  This Court has personal jurisdiction over Defendants because: Defendants are registered to do business in New York, Defendants maintains significant operations in New York, and Defendants' contracts select New York as the choice of law and venue for dispute resolution.  Further,

Defendants conduct significant business in New York such that they purposefully availed themselves of the privilege of doing business in New York.

12.    *Venue.*  Venue is proper in this Court because Defendants is located in and transacts business within this District, Plaintiff Ramnath and Guzman are located in this District, and a substantial part of the events giving rise to Plaintiffs' claims took place in this District.

## PARTIES

### PLAINTIFFS

#### *Plaintiff Nadia Ramnath*

13.    Plaintiff Nadia Ramnath is, and at all times mentioned herein was, an individual citizen of the State of New York and resident of Kings County. In March of 2022, Plaintiff Ramnath purchased the S22 Ultra.

14.    Defendants advertise their smartphones as high-end, reliable devices engineered for long-term performance and supported by extended software maintenance; Plaintiff believed in these advertisements – which is why she chose to purchase the Device. Samsung did not warn Plaintiff that Samsung could literally ruin a smartphone through its update process and subsequently refuse to repair or replace the phone that Samsung itself destroyed. Plaintiff used the phone at all times for normal, personal use.

15.    In or around October to November 2024, Plaintiff received repeat notifications from Samsung on her Device prompting initiation of a software update.

In February 2025, Plaintiff initiated the update at-issue. In Within 24 hours of installing the 6.1.1 Update on Plaintiff's Device, the Device began exhibiting severe malfunctions — including persistent stuttering, freezing, random crashes, becoming stuck in a continuous reboot loop and getting hot to the touch. These issues rendered the phone, and those of similarly situated consumers, unreliable and in many cases completely unusable.

16.    Plaintiff called Samsung who requested that she do a factory reset of her phone, which did not work. Plaintiff then sent her Device to Samsung for repair; only to have Samsung request $500 to replace the motherboard of the phone due to it being out of warranty. Plaintiff could not afford to pay $500 and requested that the damaged phone be sent back to her. Then, Plaintiff attempted to take the damaged phone to a 3rd party repair shop in New York City which also stated the phone needed extensive repairs which also were too costly to repair.

17.    Ultimately, Plaintiff purchased a new phone and maintains possession of the damaged phone – which she currently uses as a paper weight.

18.    Plaintiff's damages include: (1) the loss of the purchase price of the damaged phone, (2) significant lost time (numerous hours on calls with Samsung, repair shops, and others, as well as travel to have the phone repaired in New York City as well as driving over an hour away to attempt to repair the phone at an official

Samsung location), and (3) the loss of data and other information which was on the phone at the time of its demise.

### *Plaintiff Michael Guzman*

19.    Plaintiff Michael Guzman is, and at all times mentioned herein was, an individual citizen of the State of New York and resident of Kings County. In 2022, Plaintiff Guzman purchased the S22 Ultra from a Verizon store.

20.    Defendants advertise their smartphones as high-end, reliable devices engineered for long-term performance and supported by extended software maintenance; Plaintiff believed in these advertisements – which is why he chose to purchase the Device. Samsung did not warn Plaintiff that Samsung could literally ruin a smartphone through its update process and subsequently refuse to repair or replace the phone that Samsung itself destroyed. Plaintiff used the phone at all times for normal, personal use.

21.    In or around October to November 2024, Plaintiff received repeat notifications from Samsung on her Device prompting initiation of a software update. Plaintiff heard of the widespread issues with the update – and actually abstained from downloading it until May of 2025 as it became necessary to run the Device's features.  Within 24 hours of installing the 6.1.1 Update on Plaintiff's Device, the Device began exhibiting severe malfunctions — including persistent stuttering, freezing, random crashes, becoming stuck in a continuous reboot loop and getting

hot to the touch. These issues rendered the phone, and those of similarly situated consumers, unreliable and in many cases completely unusable.

22.    Plaintiff then called Samsung which directed him to go to Verizon. Verizon directed him to call Samsung.  Samsung then told him there was nothing that could be done because they had no knowledge of there being issues with the Devices due to the Software Update. Verizon offered a replacement phone because Plaintiff had insurance, but Plaintiff still was forced to purchase an additional device while he waited for the new phone to arrive.

23.    Plaintiff's damages include: (1) the loss of the purchase price of the damaged phone, (2) the need to purchase an additional device, (3) significant lost time (numerous hours on calls with Samsung, Verizon, repair shops, and others, as well as travel to the Verizon store), and (4) the loss of data and other information which was on the phone at the time of its demise.

## DEFENDANTS

### *Defendant Samsung Electronics America, Inc.*

24.    Defendant Samsung Electronics America, Inc. is a New York corporation with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

### *Defendant Samsung Semiconductor, Inc.*

25.    Defendant Samsung Semiconductor, Inc. is a California corporation with its principal place of business located at 3655 North First Street, San Jose, California 95134.  Plaintiff is informed and believes that Samsung Semiconductor was instrumental in the design and development of the alleged defective components that caused the defect when the 6.1.1 Update was pushed out to Plaintiff and Class member phones.

26.    At all relevant times, including the Class Period, Samsung conducted substantial business within the State of New York and throughout the United States. Samsung is responsible for the design, development, manufacturing/workmanship, marketing, promotion, distribution, and post-sale support of Samsung's consumer electronics products, including the Galaxy S22, S22+ and S22 Ultra smartphones. Samsung oversaw and controlled the design, development and dissemination of all software updates, firmware updates, representations and advertising related to the Galaxy S22 line of devices and made public assurances concerning the devices' durability, performance, and support longevity—including guarantees of up to **four years** of Android operating system ("OS") updates and **five years** of security updates.[2] Samsung also directed and authorized the release of software updates,

_____

[2] *Samsung Sets the New Standard of Four Years of OS Upgrades to Ensure the Most Up-to-Date and More Secure Galaxy Experience* at https://www.news.samsung.com/us/samsung-galaxy-os-upgrade-one-ui-android-unpacked-2022/, (stating "Eligible Galaxy devices include with four years of One UI and five years of security updates[1]: **Galaxy S Series:** Galaxy S22, S22+, S22

including the October 2024 6.1.1 Update. The deceptive acts and practices as well as the misrepresentations and omissions at issue in this case were prepared, approved, and disseminated by Samsung and its agents across New York and the nation, with the intent of inducing consumers into purchasing Galaxy Devices under false pretenses.

### *Doe Defendants 1-10*

27.    The true names and capacities, whether individual, corporate or otherwise, of the defendants sued in this action as DOES 1 to 10, inclusive, are presently unknown to Plaintiffs, and thus are served by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of the Doe defendants when they are ascertained.  Plaintiffs is informed and believes and, upon that basis alleges, that each of the fictitiously named defendants is liable for the causes of action set forth in this Complaint.

28.    At all times herein mentioned, Defendants, and each of them, were the agents, principals, servants, employees, and subsidiaries of each of the remaining Defendants, and were at all times acting within the purpose and scope of such agency, service, and employment, and directed, consented, ratified, permitted, encouraged, and approved the acts of each remaining Defendant.

---

Ultra as well as Galaxy S21, S21+, S21 Ultra, S21 FE and upcoming S series devices.").

# FACTUAL ALLEGATIONS

29.    The global smartphone industry is a multi-trillion-dollar market, with high-end smartphones representing a critical segment of consumer electronics. As of 2024, global smartphone shipments reached over 1.22 billion units annually, with premium models (retailing above $700) accounting for a growing share of total revenue. Samsung Electronics, through its Mobile eXperience (MX) division, has long positioned itself as a dominant force in the premium smartphone sector, competing directly with Apple for market leadership.[3]

30.    The Galaxy S22 series, including the S22, S22+, and S22 Ultra——was launched in early 2022 with great fanfare and aggressive marketing. Samsung promoted the lineup as a collection of professional-grade, AI-powered smartphones designed for long-term performance, productivity, and everyday use.[4] It was marketed, along with the other devices in the S22 lineup, not merely as a communications device but as an intelligent productivity tool capable of supporting the demands of remote work, creative production, and high-performance multitasking.

---

[3] https://canalys.com/newsroom/worldwide-smartphone-market-2024, (last accessed Jan. 3, 2026).
[4] https://news.samsung.com/global/samsung-galaxy-s22-ultra-offers-the-ultimate-and-most-premium-s-series-experience-yet, (last accessed Jan. 3, 2026).





31.     In response to growing consumer expectations around device longevity and security, Samsung announced in 2022 that it would support its new Galaxy devices, including the S22 lineup, with **four years of major Android OS upgrades and five years of security updates**.[5]  This promise was one of the first of its kind in

---

[5] https://9to5google.com/2022/02/09/samsung-four-years-android-updates-galaxy-s22/, (last accessed Jan. 3, 2026).

the Android ecosystem and was designed to assure consumers that their investment in Samsung hardware would be supported and warranted well into the future.

32.    For modern smartphone users, system updates are more than cosmetic upgrades; they are necessary tools to maintain compatibility, enhance performance, and secure personal data. Samsung explicitly emphasized these updates as value-adding features in the Galaxy S22 marketing materials, highlighting the device's ability to "get smarter over time" and remain "future-ready" through seamless software support.[6]

33.    Reasonable consumers who purchased the Galaxy S22+ and other phones in the S22 lineup relied on these representations. In a competitive market where consumers are asked to pay upwards of $1,000 for a device, assurances of long-term functionality and reliable software support are not only material—they are central to the purchase decision. These buyers expected their devices to remain functional and optimized through the life cycle of the advertised updates.

34.    In September 2024, Samsung initiated the global rollout of the 6.1.1 Update, its newest Android-based firmware, to a range of premium devices, including the Galaxy S22+ and other devices in the S22 lineup.[7]    Contrary to

---

[6] https://news.samsung.com/us/one-ui-6-1-update-brings-galaxy-ai-features-to-galaxy-s22-series-and-more/; https://www.wired.com/story/samsung-galaxy-s22-ultra-deals/, (both accessed last on Jan. 3, 2026).

[7] *Id.*

Samsung's representations regarding the nature and quality of the Samsung Galaxy phones, the update rendered many devices inoperable. The update—intended to enhance performance and integrate new AI features—instead caused widespread device malfunctions. Thousands of users reported that their phones became stuck in boot-loops, experienced repeated crashes, or were bricked entirely after installing the update.[8]

> This Update is literally BRICKING the phones by starting with crashes, freezes, and ending with boot loops that go for hours and at the end the phone just not turning on anymore. They further noted that Samsung service centers required users to pay for motherboard replacements, despite the issue arising after a software update.

> ***

> My phone stuck with boot loop post update. Reset and clear cache nothing works. Now it just keeps boot looping as long as it has charge and then dies.

> ***

> It was working so well until yesterday when it started to boot loop. The phone is almost not usable and sometimes it turns on only to crash in a couple of minutes…They also mentioned that the service center suggested a motherboard replacement, which is expensive.

> ***

---

[8] https://www.androidheadlines.com/2024/12/one-ui-6-1-1-reportedly-leaving-galaxy-s22-units-stuck-in-bootloop.html; https://www.msn.com/en-us/news/technology/one-ui-611-reportedly-leaving-galaxy-s22-units-stuck-in-bootloop/ar-AA1wbre3, (last accessed Jan. 3, 2026).

> S22 bricked by One UI 6.1 update! It keeps boot looping and occasionally move forward, and crash shortly then boot looping again!!

35.    The issue was so pervasive that professional reviewers also reported on users' experience:

> When Samsung pushed out One UI 6.1 to the Galaxy S22 series back in September, the update added some popular AI features. But a subsequent update, One UI 6.1.1, came with something that we're sure users didn't want. It came with a bug that caused the Galaxy S22 line to experience boot looping or stuttering on the display. -PhoneArena
>
> ***
>
> Several Galaxy S22 series users have started complaining about boot loop and stuttering issues after they installed the One UI 6.1.1 update. – SamMobile Report

36.    These failures rendered phones in the S22 lineup unusable for their essential purpose: as a functional communication and computing device. Affected consumers lost access to stored data, applications, contacts, and cloud-linked services. Many were forced to perform factory resets or pursue costly third-party repairs—despite Samsung's warranty still being active in many cases.[9]

37.    Public complaints flooded online forums. On Reddit, users described the issue as "devastating," with one writing, "My phone has been rebooting all day.

---

[9] https://www.forbes.com/sites/zakdoffman/2024/12/21/samsungs-update-failure-bad-news-for-millions-of-galaxy-users/;
https://www.samsung.com/us/support/troubleshoot/TSG10002308/, (last accessed Jan. 3, 2026).

It's completely useless now."[10] On Samsung's own EU Community board, dozens of threads appeared under titles like "Galaxy S22+ Dead After 6.1.1 Update" and "Why Is Samsung Silent?" Many reported losing all their personal data and were unable to recover their phones without a full factory reset—if recovery was possible at all. For others, professional repair services were required, at significant cost to the user.[11]

> I got the One U.I update on my s22 on Tuesday and since then, it's been constantly freezing, lagging, and restarts itself continuously. I also noticed the battery drains way faster than usual, draining 1% every 2 minutes for me. Sometimes my phone will be fine and be working for an hour and then all of a sudden freeze and gets stuck in a boot loop and when the boot loop is done, it starts back up again after freezing when I open an app. I've already tried clearing cache partition, hard rebooting my phone, uninstalling apps, making sure all my apps were updated, but nothing has worked. I've seen a lot of people with similar experiences say that nothing has helped their phone at all so I'm not going to try a factory reset if it's not going to work…Definitely planning on just buying a new phone because Samsung doesn't care much about its users if this problem is happening to so many people specifically following an UPDATE, yet they aren't doing anything to look into it and fix it, at least I haven't heard anything.

38.    While Samsung eventually acknowledged that its SmartThings Framework app was "causing some Galaxy devices to reboot," it failed to provide a

---

[10] https://www.androidpolice.com/one-ui-6-1-1-update-reportedly-bricking-some-galaxy-s22s-for-good/, (last accessed Jan. 3, 2026).

[11] https://eu.community.samsung.com/t5/galaxy-s22-series/s22-ultra-boot-loop-issues-after-6-1-ui-firmware-update/td-p/11139835/page/4, (last accessed Jan. 3, 2026).

uniform, effective remedy. No official recall was issued, and customers were advised to perform self-repairs, including booting into safe mode, and uninstalling the SmartThings app—solutions that were ineffective for many bricked phones.[12]

39.    In many cases, Samsung denied warranty coverage or refused to offer free repairs, even when the damage was clearly caused by its own software. This left consumers burdened with bricked phones, unexpected repair bills, and no reliable communication tool.

40.    Samsung's marketing representations about the Galaxy S22's longevity, software support, and update reliability were materially misleading. While claiming to deliver sustained device optimization, Samsung failed to adequately test its own updates to ensure compatibility and stability with the hardware it sold.

41.    Samsung also omitted any warning that its phones were susceptible to defects upon update and that the 6.1.1 Update could carry catastrophic risk—despite having rolled out the update in phased waves and likely receiving internal bug reports before the full global launch. Samsung's continued promotion of the Galaxy S22 as reliable, future-proof, and intelligent, particularly after widespread complaints emerged was deceptive and unfair under New York law.

---

[12] https://www.gizmochina.com/2024/12/19/widespread-boot-loop-issue-reported-on-galaxy-s22-ultra-since-one-ui-6-1-update/ , (last accessed Jan. 3, 2026).

42.    Had consumers known that Samsung's software updates could irreversibly damage their phones, they would not have purchased phones in the S22 lineup, or they would have paid substantially less. Samsung's own marketing positioned the phone as a premium, long-lasting product, but its conduct revealed a failure to meet the most basic consumer expectation: that a phone should remain operational after a manufacturer-issued update. One consumer summed it up clearly:

> It's outrageous that a £1300 ($1,625) phone has failed in 23 months, and Samsung's response is a £500+ ($635+) repair quote for a phone which is laughably now only worth ~£400 ($500) brand-new.[13]

43.    Instead, consumers were deprived of the benefit of their bargain and incurred financial, practical, and emotional harm due to Samsung's failure to live up to the most basic promise it made: that its phones would work.

### A.    Samsung's Galaxy S22 Smartphones

44.    Samsung is a leading manufacturer and distributor of smartphones in the United States. The company plays a pivotal role in the mobile device industry, where it has consistently promoted itself as a pioneer in innovation and user experience.

---

[13] https://www.phonearena.com/news/one-ui-6.1.1-makes-some-galaxy-s22-series-handsets-unusable_id166040, (last accessed Jan. 3, 2026).

45.    The Samsung Galaxy S22 was launched in February 2022 as part of Samsung's flagship Galaxy S lineup. The device was marketed as a premium smartphone offering powerful performance, long-lasting hardware and software support, and advanced user experience features, including enhanced multitasking, top-tier camera capabilities, and high-speed processing powered by Samsung's Exynos and Qualcomm Snapdragon chipsets depending on the region.

46.    In its marketing materials, Samsung promised customers that Galaxy S22 devices would receive up to four generations of Android OS updates and five years of security updates—claims that explicitly positioned the device as a future-proof investment for consumers seeking **long-term reliability**.[14]

47.    Samsung further touted its "One UI" software layer as offering intuitive, stable, and optimized user experiences that would evolve with user needs and software enhancements. These representations were featured prominently in promotional content across Samsung's website, carrier partner sites, and product packaging.[15] These representations are false and misleading because the smartphones routinely fail to function after Samsung-created software updates were initiated on hundreds of S22 models, as users report once the software update ran,

---

[14] https://news.samsung.com/us/new-samsung-galaxy-s22-s22-deliver-revolutionary-camera-experiences-day-night/#_ftn11, (last accessed Jan. 3, 2026).
[15] https://news.samsung.com/us/new-samsung-galaxy-s22-s22-deliver-revolutionary-camera-experiences-day-night/.com, (last accessed Jan. 3, 2026).

their phones were stuck in a boot loop, and in many cases the phone was rendered inoperable and the product ineffective for its advertised purpose.

**B.    The UI 6.1.1 Update Defect[16]**

48.    In October 2024, Samsung released the One UI 6.1.1 software update to Galaxy S22 users in the United States and globally. Shortly after the release, users began reporting severe issues, including complete device lock-ups, boot failures, black screens, motherboard crashes and phones becoming non-responsive or effectively "bricked," thereby rendering the devices non-functional.

49.    These failures were not isolated. Following the release of the 6.1.1 Update, Galaxy S22 users across multiple regions reported widespread and severe device malfunctions, including boot loops, system crashes, and devices becoming entirely non-functional. These complaints appeared across various platforms— including Reddit and Samsung's official community forums—within days of the update's release, suggesting the issue was both immediate and widespread.[17] Samsung was tagged repeatedly in posts and direct complaints, and several customers reported that their issues began immediately after installing the update,

---

[16]  The Update Defect involves one or more components of the Samsung Galaxy phone, and may in fact be caused by a defect in the manufacturing, workmanship, design or materials used in addition to and/or a software or firmware defect.
[17] https://www.droid-life.com/2024/10/04/galaxy-devices-stuck-in-bootloop-following-app-update/, (last accessed Jan. 3, 2026).

underscoring that Samsung either knew or should have known of the effects of this specific defect shortly after the rollout began.[18]

50.    Multiple users who sought assistance at Samsung-authorized service centers reported being informed that their devices required motherboard replacements or could not be repaired at all, and that repair costs would not be covered under warranty.[3] Some users stated that they were denied free repairs despite showing that the defect occurred immediately after installing Samsung's official update.[19] In at least one case, a customer was only able to obtain a replacement device due to having purchased separate protection coverage. These user accounts suggest that Samsung did not consistently offer relief for defects resulting from its own software and instead improperly shifted the cost of repair or replacement onto affected consumers.

**C.    Samsung's Knowledge of the Specific 6.1.1 Update Defect Prior to and After Release**

51.    Samsung publicly asserts that all firmware versions undergo thorough testing before release, including optimization for performance, stability, and

---

[18]https://www.reddit.com/r/samsung/comments/1hh9ma1/samsung_has_bricked_thousands_of_samsung_galaxy/, (last accessed Jan. 3, 2026).

[19] https://eu.community.samsung.com/t5/galaxy-s22-series/s22-ultra-boot-loop-issues-after-6-1-ui-firmware-update-your/td-p/11255662, (last accessed Jan. 3, 2026).

compatibility across device variants.[20] Despite these quality assurance protocols, the October 2024 6.1.1 Update caused widespread and severe functional failures in Galaxy S22 devices. Thousands of users across global markets—including the United States and Europe—reported that their phones became trapped in the Update Defect after installing the update.[21] One consumer described their experience like this:

> I've [had] the same Issue, after 1 week…of the update the phone suddenly stuck on boot loop, ironically, Samsung replies not relating this to the update and keep pushing us into the warranty issues. It's a disaster to launch an update [that] kills the users' devices and cause[s] a loss for their data and time. I was [a] loyal customer for Samsung products for more than 20 years, not anymore I think.

52.     Samsung does not permit official rollback options once an update is installed, and the company did not issue a recall or pause the rollout in response to these early reports.[22] These facts, combined with the immediate post-update complaints flooding online support forums, suggest that Samsung became aware—or should have become aware—of the defect shortly after deployment. Nevertheless,

---

[20] https://semiconductor.samsung.com/consumer-storage/support/faqs/internalssd-fw-sw/, (last accessed Jan. 3, 2026).

[21] https://www.droid-life.com/2024/10/04/galaxy-devices-stuck-in-bootloop-following-app-update/, (last accessed Jan. 3, 2026).

[22] https://semiconductor.samsung.com/consumer-storage/support/faqs/internalssd-fw-sw/, (last accessed Jan. 3, 2026).

Samsung proceeded with the full-scale global release of the 6.1.1 Update without meaningful public warning or corrective action.

53.    The October 2024 6.1.1 Update Defect is not the first time Samsung has released a software update that rendered its Galaxy S-series devices non-functional. Samsung previously faced widespread complaints in early October 2024 when an update to its SmartThings Framework application caused several older Galaxy models—including the Galaxy S10, Note 10, A90, and M51—to enter continuous boot loops, rendering them effectively bricked.[23] Around the same period, Galaxy S21 users also reported that the One UI 6.1 update caused their devices to become inoperable, with users stating the phones entered persistent reboot cycles or failed to power on entirely.[24]

54.    Despite having experienced these same or similar update-induced failures in its prior models, Samsung failed to adopt preventative measures or sufficient pre-release testing protocols to ensure stability on the Galaxy S22 before releasing the 6.1.1 Update. This recurrence of the same type of defect across multiple generations of Galaxy smartphones—each triggered by official Samsung updates—underscores that Samsung either knew or should have known prior to selling the

---

[23] https://arstechnica.com/gadgets/2024/10/samsung-update-bricks-phones-giving-harsh-reminder-of-data-backup-importance/, (last accessed Jan. 3, 2026).

[24] https://eu.community.samsung.com/t5/other-galaxy-s-series/6-1-has-bricked-my-s21-5g/td-p/10604299, (last accessed Jan. 3, 2026).

Galaxy Devices that the phones were susceptible to critical and potentially fatal defects resulting from software updates and also before releasing the 6.1.1 Update that it would pose substantial risk to device functionality.

55.    When confronted with reports of bricked Galaxy S22 units, Samsung neither issued a recall nor offered users a software rollback option. This silence, in the face of overwhelming evidence of harm, constitutes willful concealment and deceptive business practices.

### D.    Samsung's Unconscionable Warranty and Failure to Remedy

56.    Samsung includes a number of warranties with a purchase of its Galaxy smartphones, including a limited one-year manufacturer warranty, covering  the Galaxy S22. Under the terms of this one-year warranty, Samsung states:

> *Samsung warrants to the original purchaser that Samsung's mobile device product and accessories... are free from defects in material and workmanship under normal use and service for the period of one (1) year from the date of purchase.[25]*

---

[25] https://www.samsung.com/us/support/legal/LGL10000282/, (last accessed Jan. 3, 2026).

57.    However, the warranty explicitly **excludes coverage** for software-related issues unless they result from a defect in *materials or workmanship*. Samsung's official one-year warranty disclaims responsibility for:

> *Defects or damage resulting from... improper or unauthorized modification or repair" and "any software, including software added to the product through Samsung's factory-integration, third-party software, or the reloading of software.*[26]

58.    Samsung, however, also includes with its Galaxy smartphones guarantees of up to ***four years*** of Android OS updates and ***five years*** of security updates, stating at https://www.news.samsung.com/us/samsung-galaxy-os-upgrade-one-ui-android-unpacked-2022/ that "Eligible Galaxy devices include with four years of One UI and five years of security updates[1]: **Galaxy S Series:** Galaxy S22, S22+, S22 Ultra as well as Galaxy S21, S21+, S21 Ultra, S21 FE and upcoming S series devices". Samsung, however, refused to honor such extended warranties for phones damaged by the 6.1.1 Update.

59.    Nevertheless, even though Samsung authored, released, and promoted the 6.1.1 Update as part of its core software ecosystem, it routinely declined to cover device failures caused by that update, leaving consumers to bear the cost of repair or device replacement.

---

[26] *Id.*

60.    The terms of Samsung's limited warranty are procedurally and substantively unconscionable in this context. Samsung had exclusive knowledge of the risks associated with the phones it sold consumers and 6.1.1 Update but did not disclose them, leaving consumers with no meaningful opportunity to avoid the defect.

61.    To ensure its Galaxy Devices would be fit for their intended use—*i.e.*, as reliable, high-performance mobile devices—Samsung should have exercised reasonable care in testing its software updates prior to public release. Had Samsung conducted adequate testing, or implemented standard rollback safeguards, it would have identified the risk that the 6.1.1 Update posed to device functionality. Instead, Samsung released the update without sufficient protections, causing thousands of devices to fail.

62.    Samsung continues to market, distribute, and profit from its Galaxy S22 phones while withholding critical information about the risk of device failure tied to its own software. As a result, Plaintiffs and Class Members have incurred damages, including the amount paid for the devices and, in many cases, the additional costs of repair or replacement.

63.    Plaintiff and Class Members each spent hundreds—if not thousands— of dollars on Samsung smartphones that no longer function as promised. Samsung, a sophisticated business entity specializing in consumer electronic devices such as

mobile phones, knew that Plaintiff and the Class Members would use the mobile phones for the particular purpose they made them, *i.e.* consistent mobile communication and app access, and Samsung had reason to know Plaintiff and Class Members were relying on its skill and judgment in furnishing products for such purposes. Moreover, Samsung emphasized reliability, longevity, and seamless software optimization—claims that have proven false.

64.    Indeed, as numerous consumers have observed, the problem is not only that Samsung sold devices that it knew were susceptible to critical and potentially fatal defects and indeed failed due to a software defect—it is that Samsung has failed to meaningfully acknowledge or remedy the issue despite mounting complaints. When affected users contact Samsung Support, they are frequently met with generic troubleshooting suggestions, such as performing a factory reset or booting into safe mode—none of which address the underlying defect caused by the update. Some consumers report being told that Samsung is "aware of the issue" and "working on a fix," but no public statement or timeline for resolution has been provided. Others are advised to seek hardware repairs or to replace their phones entirely. In many cases, replacement units have exhibited the same software-induced defect, requiring consumers to restart the entire process and bear the cost.

65.    Samsung has not offered any extended warranty coverage, reimbursement, or public acknowledgment of the scope of the issue. Its conduct has

left consumers without recourse while continuing to profit from the sale and branding of its S-series phones as premium, durable, and software-optimized devices.

## CLASS ACTION ALLEGATIONS

66.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves, and all others similarly situated. The proposed class and subclass consist of the following:

> Nationwide Class: All consumers residing in the United States who, within four years prior to the filing of this action, purchased Samsung Galaxy Devices, through the present.
>
> New York Sub-Class: All consumers residing in the state of New York who, within four years prior to the filing of this action, purchased Samsung Galaxy Devices, through the present.

67.    The following persons and entities are excluded from the proposed class: Defendants, their employees, contractors, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

68.    Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

69.     This action is properly brought as a class action for the following reasons:

    a)    The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiffs do not know the exact number and identity of all Class Members, Plaintiffs are informed and believes that there are thousands of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

    b)    The disposition of Plaintiffs' and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

    c)    The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

    d)    There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

        1)    Whether the Galaxy S22 smartphones were defective, including whether they were defectively designed, manufactured, or unfit for their intended use;

        2)    Whether Samsung's representations about the long-term reliability, software update support, and communication functionality of the Galaxy S22 devices were false, misleading, or deceptive;

        3)    Whether Samsung intentionally or negligently misrepresented or omitted material facts regarding the reliability and functionality of the Galaxy S22 smartphones to induce purchases;

4) Whether Plaintiffs and Class Members reasonably relied on Samsung's representations or omissions in deciding to purchase the devices;

5) Whether Samsung breached express or implied warranties, including the implied warranty of merchantability;

6) Whether Samsung's conduct constituted false advertising, unfair competition, or violated consumer protection laws;

7) Whether Samsung unjustly retained revenues from the sale of defective Galaxy S22 devices and should be ordered to disgorge those profits;

8) Whether Plaintiffs and Class Members suffered economic harm, and the appropriate measure of damages, restitution, or other monetary relief;

9) Whether injunctive or equitable relief is warranted to prevent future harm, and the scope of such relief; and

10)  Whether Plaintiffs and Class Members are entitled to attorneys' fees, expert costs, and litigation expenses.

70.    *Typicality.* Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories.

71.    *Adequacy.* Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other

proposed Class Members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation as counsel.

72.     *Superiority.* A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons: (1) given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions; (2) this action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of time, effort and resources will be fostered, and uniformity of decisions will be insured; (3) absent class certification of Plaintiffs' claims, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of its wrongful conduct; and (4) Plaintiffs knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

73.     Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

74.    Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

## COUNT I

## VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT

("18 U.S.C. § 1030, *et seq.*")

75.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

76.    Samsung caused Plaintiffs and class members to download and install Updates to their Devices without informing its customers that the Updates contained code that would diminish Device performance, or otherwise harm performance, in those Devices. Accordingly, Plaintiffs and class members did not give permission for Samsung to install defective Updates onto their Devices — nor could they — as Samsung did not provide material information to Plaintiffs and class members regarding the updates.

77.    Samsung violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of software updates to Plaintiffs and class members' devices to access, collect, and transmit information to Devices, which are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication. By transmitting information to class members' Devices, Samsung intentionally caused damage without authorization to class members'

devices by impairing the ability of those Devices to operate as warranted, represented, and advertised.

78.    Samsung violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiffs and class members' Devices — protected computers — without authorization, and as a result, caused damage to Plaintiffs and Class members' Devices by impairing the integrity of those Devices.

79.    Samsung's conduct has caused loss to Plaintiffs and class members in real, economic damages. Plaintiffs and class members have additionally suffered loss by reason of these violations, in terms of added expense in operating their Devices, which have been harmed, or in the purchase of new, unharmed Devices.

80.    Unless Samsung is restrained and enjoined, Samsung will continue to commit such acts. Plaintiffs remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by § 1030(g).

81.    Plaintiffs and the Class seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the Computer Fraud and Abuse Act.

## COUNT II

## BREACH OF EXPRESS WARRANTY

82.    Plaintiffs and the Class purchased their Samsung Galaxy phones with the reasonable expectation that the devices would function properly throughout the usable life of the product.

83.    Defendant Samsung made statements of fact and promises to Plaintiff and the Class that the Samsung Galaxy S22 phones were of merchantable quality and fit for their ordinary use.

84.    Defendants expressly warranted, through written affirmations of fact and promises, that the Galaxy Devices were free from defects in materials and workmanship and would perform reliably over time, including through guaranteed software updates.

85.    Specifically, Samsung represented that Galaxy S22 devices would receive four years of major Android operating system updates and five years of security updates as part of its formal software support policy. Samsung marketed these updates as a benefit of ownership, promising that the device would remain secure, compatible, and functional as new features were introduced. These

affirmations were part of the basis of the bargain when Plaintiff and Class Members purchased their devices.

86.    Samsung's website, advertisements, and promotional materials also described the Galaxy S22 as a reliable, high-performance smartphone "built to last" and "engineered to keep getting better" through regular, official software improvements.

87.    Defendant breached its express warranties by releasing the 6.1.1 Update for the Galaxy S22 which caused widespread and severe malfunctions, including but not limited to the Update Defect. As a result, the smartphones failed to perform as represented and became unfit for ordinary use shortly after installation of an official Samsung software update.

88.    Samsung also failed to repair, replace, or otherwise cure the defective condition of affected Galaxy S22 devices despite receiving notice of the defect through widespread consumer complaints, warranty claims, and support inquiries. Samsung has not issued a recall, extended warranty coverage, or offered refunds, and continues to promote the S22 as reliable and future-ready despite knowledge of the defect.

89.    The Samsung Galaxy S22 phones failed to perform as Defendants promised. The phones were not of the same quality as those generally acceptable in the trade, nor were they fit for the ordinary purposes for which such goods are used.

In breach of its express warranties, the phones were rendered inoperable by Samsung's Update Defect.

90.    Plaintiffs each took reasonable steps to immediately notify Samsung — and within Samsung's four-and-five year period for the Android operating system updates and security updates. The Samsung Galaxy S22 phones were not as represented, were not of merchantable quality, nor fit for their particular purpose.

91.    When Defendants placed the Samsung Galaxy S22 phones into the stream of commerce, it reasonably should have known of the Defect.

92.    The defects in the Samsung Galaxy S22 phones were not open or obvious to consumers prior to purchase.

93.    Any purported limitation of the duration and scope of the express warranties given by Defendants is unreasonable, unconscionable and void, because Defendants knew or recklessly disregarded that the Defect in the Galaxy S22 phones existed and might not be discovered, if at all, until the defective phones had been used for a period of time longer than the period of any written warranty, and Defendants willfully withheld information about the Defect from purchasers of Samsung's Galaxy S22 phones.

94.    As a direct and proximate result of Defendants' representations and conduct, Plaintiffs and the class have suffered injury and damages in an amount to be determined at trial.

95.    Plaintiffs and Class Members were injured as a result of Defendant's breach. Had Plaintiffs and Class Members known that the 6.1.1 Update would render their devices non-functional, they would not have purchased the Device or would have paid significantly less for it.

96.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and the Class have suffered damages, including but not limited to loss of use, overpayment, and costs for repair or replacement of the devices.

97.    Plaintiffs and Class Members are entitled to recover all damages permitted by law, including consequential and incidental damages, as well as any equitable relief the Court deems just and proper.

## COUNT III

### BREACH OF IMPLIED WARRANTY

98.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

99.    The Galaxy Devices fail to perform as warranted and would not pass without objection in the trade, as they do not provide reliable — or even feasible — functionality for core communications tasks, including voice calls, system operation, and software stability. These failures undermine a central purpose for which the phones are marketed and purchased.

100.    Similarly, the smartphones' inability to maintain operability following Samsung's own 6.1.1 Update renders them unfit for the ordinary purposes for which such goods are used—namely, consistent mobile communication, app access, and dependable software integration.

101.    The smartphones were not adequately labeled or packaged in a manner that disclosed the risk of bricking or boot failure upon installation of manufacturer-issued software updates. To the contrary, the labeling and marketing explicitly represent that the devices are reliable, update-compatible, and engineered for long-term performance, which they are not. For these reasons, the Galaxy S22 devices do not conform to the promises or affirmations of fact made on their website, advertisements, or marketing materials.

102.    Defendants breached the implied warranty of merchantability by selling smartphones that failed shortly after being subjected to a core manufacturer-released update. The devices were not of merchantable quality and were not fit for the ordinary purposes for which smartphones are used.

103.    As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and other Class Members did not receive the benefit of their bargain and instead received devices with a latent defect that substantially impaired their value. Plaintiffs and Class Members were harmed by the product's malfunctioning, loss of use, and the expense of repair or replacement.

104.   Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Galaxy S22 or the diminished value of the devices due to the defect.

105.   Plaintiffs and Class Members are also entitled to recover attorneys' fees, costs, and expenses.

## COUNT IV

## VIOLATIONS OF NEW YORK'S GENERAL BUSINESS LAW § 349

## DECEPTIVE ACTS AND PRACTICES

("GBL § 349")

106.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

107.   For purposes of the GBL § 349, Defendants are considered a business and Plaintiffs (as well as Class members) are considered consumers.

108.   New York's GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service [. . .]"

109.   Defendant committed deceptive acts or practices by employing false, misleading, and deceptive representations and/or omissions about the efficacy of the Products and the Updates applied to those Products.

110.   Information as to the efficacy and success Products and Updates applied consistent with advertising was in the exclusive control of Defendant. Plaintiffs could not possibly have known that these representations were false and materially misleading; additionally, Plaintiffs could not possibly have known that Defendant was omitting that their Updates, which were also in their exclusive control, were defective and would damage their Devices.

111.   Because Plaintiffs bought these Products, Plaintiffs have standing to pursue this claim because they has suffered an economic injury due to lost money or property as a result of Defendant's acts or practices.  When Plaintiffs purchased the Products, she relied on false, misleading and deceptive representations that the Products were fit for the purpose for which they were advertised.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's Products.

112.   Defendant's conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations.  Defendant knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – believe that they worked for the purposes for which they were advertised.

113.   Defendants know that this information about its Products, which are specifically marketed toward people in the market for smartphones, are material to

these types of consumers.  As a result of its deceptive acts and practices, Defendants sold millions the Products to unsuspecting consumers nationwide, including in New York.

114.   As a direct and proximate result of Defendants' false, misleading and deceptive representations and/or omissions, Plaintiffs and Class members were injured in that they: (1) overpaid for the Products that were not what Defendants represented, (2) were deprived of the benefit of the bargain because these Products were different than what was advertised and marketed, and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant had adequately disclosed the actual efficacy of the Products and the applied Updates.

115.   On behalf of herself and Class members, Plaintiffs seek to enjoin Defendant's unlawful acts and practices – as well as to have warnings added to the packaging of the Products and on the data disseminated with respect to Updates going forward.

116.   Additionally, on behalf of themselves and Class members, Plaintiffs also seeks to recover their actual damages or $50.00 in statutory penalties, whichever is greater, three times their actual damages, as well as reasonable attorneys' fees.

## COUNT V

## VIOLATIONS OF NEW YORK'S GENERAL BUSINESS LAW § 350

## FALSE ADVERTISING

("GBL § 350")

117.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

118.    Defendants engaged in a campaign of false and misleading advertising and marketing with regard to the utility and functionality of its Products to deceive consumers into believing that the Products were fit for the purpose for which they were advertised.

119.    Because Plaintiffs bought these Products, Plaintiffs have standing to pursue this claim because they each suffered an economic injury due to lost money or property as a result of Defendants' acts or practices.  When eac Plaintiff purchased the Products, they relied on false, misleading and deceptive representations, as well as omissions to the contrary, which led them to believe that the Products and their subsequent Updates were fit for their advertised purpose.  Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendants' Products and the Updates.

120.    Defendants' conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations.    Defendants knew

consumers would purchase its Products and/or pay more for them under the false –
but reasonable – believe that they were consistent and useful with their advertised
purpose as well as to apply the necessary Updates which Defendants themselves sold
into commerce.

121.    Defendants know that the functionality of its Products, which are
specifically marketed toward people seeking smartphones, are material to
consumers.  As a result of its false advertising, Defendants sold millions of Devices
of the Products to unsuspecting consumers nationwide.

122.    As a direct and proximate result of Defendant's false, misleading and
deceptive representations and/or omissions, Plaintiffs and Class members were
injured in that they: (1) overpaid for the Products that were not what Defendant
represented, (2) were deprived of the benefit of the bargain because these Products
were different than what was advertised and marketed, and (3) were deprived of the
benefit of the bargain because the Products they purchased had less value than if
Defendant had adequately disclosed the truth about them.

123.    On behalf of herself and Class members, Plaintiffs seek to enjoin
Defendant's unlawful acts and practices.   On behalf of themselves and Class
members, Plaintiffs also seek to recover their actual damages or $500.00 in statutory
penalties, whichever is greater, three times their actual damages, as well as
reasonable attorneys' fees.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

124.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

125.   Samsung owed a duty to Plaintiffs and Class Members to provide truthful, accurate, and non-misleading information about the Galaxy Devices and the impact of official software updates, including the 6.1.1 Update. Given the high cost and critical daily use of smartphones, Samsung had a duty to ensure that its marketing and product representations reflected the true nature and performance of the devices.

126.   Samsung made affirmative statements regarding the Galaxy S22 that were materially misleading, as discussed above. These statements were disseminated through advertisements, promotional materials, product packaging, Samsung's website, and third-party retailers.

127.   At the time Samsung made these representations, it either knew or, in the exercise of reasonable care, should have known that the Galaxy S22 devices were defective or likely to fail when subjected to updates such as the 6.1.1 Update. Samsung failed to disclose the defect and continued to make representations about product quality and reliability that were inconsistent with consumers' real-world experience and Samsung's own internal knowledge.

128.   Plaintiffs and Class Members justifiably relied on Samsung's misrepresentations in deciding to purchase the Galaxy S22. They had no reason to suspect the devices were defective or that a manufacturer-issued update would cause complete device failure.

129.   As a direct and proximate result of Samsung's negligent misrepresentations, Plaintiffs and Class Members suffered damages including, but not limited to, overpayment for the product, loss of use, data loss, and expenses incurred in attempts to repair or replace defective devices.

130.   Plaintiffs and Class Members seek compensatory damages and all other relief the Court deems appropriate under law and equity.

## COUNT VII

### UNJUST ENRICHMENT

131.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

132.   Plaintiffs Guzman and Class Members conferred a benefit upon Defendant Samsung by purchasing Galaxy smartphones indirectly — including the Galaxy S22 and other affected models — and paying a premium price based on Samsung's express representations regarding product quality, reliability, and long-term performance.

133.  Samsung knowingly accepted and retained this benefit under circumstances that make it unjust and inequitable for Samsung to retain those funds without providing restitution. Specifically, Samsung retained money paid by Plaintiffs and Class Members despite selling devices that were defective and failed to perform as advertised, particularly with regard to their update compatibility, software reliability, and basic communication functionality.

134.  Plaintiffs and Class Members reasonably relied on Samsung's representations that the Galaxy S22 was "engineered to last," would "get better over time" with software updates and included features such as "voice-targeting microphones [that] give you high-quality call performance." They purchased the devices in reliance on these material representations.

135.  As a result of the undisclosed defect, Plaintiffs and Class Members received substantially less than the value they paid for. The smartphones did not perform as promised or warranted, rendering them unfit for essential functions and depriving consumers of the benefit of their bargain.

136.  Had Plaintiffs and Class Members known of the defect and the associated risks tied to Samsung's software updates, they would not have purchased the Galaxy S22 or would have paid significantly less for the product.

137.    As a result of its wrongful conduct, Samsung has been unjustly enriched and should be required to disgorge all profits, revenues, and benefits it obtained from the sale of defective Galaxy S22 smartphones.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendants as follows:

(a)    Certifying this action as a class action, appointing Plaintiffs as the Class representative, and designating the undersigned as class counsel;

(b)    A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

(c)    A judgment awarding Plaintiffs and all Class members restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class as a result of the unlawful, unfair and/or fraudulent business practices described herein;

(d)    A judgment awarding Plaintiffs and the Class damages under common law and/or by statute, and punitive damages;

(e)    A judgment awarding Plaintiffs and Class members their costs of suit, including reasonable attorneys' fees as otherwise permitted by statute or law, and pre- and post-judgment interest; and

(f)     Granting such other and further relief as this Court may deem just and

proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members hereby demand a trial by jury on all causes

of action so triable.


Respectfully submitted,

Dated: January 27, 2026          */s/ Blake Hunter Yagman*

**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES, LLP**
Blake Hunter Yagman (Bar No. 5644166)
*Byagman@sshhzlaw.com*
The Foundry Building
1050 30th St., N.W.
Georgetown, Washington, D.C. 20007
Tel.: (929) 709-1493

*Counsel for Plaintiffs Ramnath, Guzman,*
*and the Proposed Classes.*